Manfred P. Muecke (SBN 222893)
**Manfred APC**
600 W Broadway Ste 700
San Diego CA 92101
Tel: (619) 550-4005
Fax: (619) 550-4006
mmuecke@manfredapc.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA GARLAND AND LEROY JACOBS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>THE KROGER CO.,<br><br>Defendant. | Case No. **'24CV0240 LL   BLM**<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiffs Chelsea Garland ("Plaintiff Garland") and Leroy Jacobs ("Plaintiff Jacobs") allege upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

## I.   CONSUMER DEMAND FOR NATURAL FLAVORS

1. According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

2. According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

3. The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these

---

[1] Lauren Manning, How Big Food is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

1

CLASS ACTION COMPLAINT
*Garland et. al. v. The Kroger Co.*, No.

synthetic ingredients.[2]

4.      Mintel concluded that avoidance of artificial flavors is just as strong as consumers' desire for natural flavors, in "Artificial: Public Enemy No. 1."[3]

5.      Surveys by Nielsen, New Hope Network, and Label Insight confirmed that between sixty and eighty percent of the public tries to avoid artificial flavors, believing them to be potentially unhealthy and contributing to a wide range of maladies.

6.      Over eighty percent of them believe foods with artificial flavors are less healthy than those with only natural flavors.

7.      One expert noted that "When [consumers] think about whether a food is healthy or not, [they] likely consider whether or not it has the word 'artificial' in the ingredients list."

## II.      LEGAL BACKGROUND

8.      Over 100 years ago, consumers were similarly concerned, based on the reports of muckraking journalists, about the harmful and untested chemicals that were added to their food.

9.      In response to this unregulated environment where synthetic molecules manufactured in laboratories substituted for the wholesome ingredients promoted on food packaging, the Pure Food and Drug Act of 1906 required disclosure of artificial flavoring to ensure the public would get what they paid for.

10.      These requirements were strengthened when Congress adopted the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq.*

---

[2] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.
[3] Alex Smolokoff, Natural Color and Flavor Trends in Food and Beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring Today's Top Ingredient Trends and How They Fit into Our Health-Conscious World, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015; Lauren Manning, How Big Food is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

11.     California and Illinois adopted these laws and regulations through the Sherman Food, Drug, and Cosmetic Law ("Sherman Law") and Illinois Food, Drug and Cosmetic Act ("IFDCA"). Cal. Health & Safety Code ("HSC") § 109875, *et seq*.; 410 ILCS 620 *et seq*.

12.     The newly established Food and Drug Administration ("FDA") was aware of how companies used advanced scientific knowledge to substitute dangerous and unhealthy flavoring chemicals in place of promoted ingredients like fruits and natural fruit flavors.

13.     Beyond the potential to cause physical harm, these synthetic substances were significantly cheaper than the natural ingredients and natural flavors they replaced.

14.     To facilitate an honest marketplace and protect consumers, the rules required that the source of a food's taste, whether the pictured ingredients, natural flavors from those ingredients, or completely synthetic sources, be conspicuously disclosed to the buyer as part of a food's name. 21 C.F.R. § 101.22(i)(1).

15.     According to one scholar, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[4]

16.     This was supported by research showing that "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging" to make quick purchasing decisions.[5]

_____

[4] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[5] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3,

17.     To reach this goal, the FDA defined a flavor as a substance which imparts taste. 21 C.F.R. §§ 101.22(a)(1) and (3).

18.     Then, it defined natural flavor as the "essential oil, oleoresin, essence or extractive" from fruits or vegetables, "whose significant function [] is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

19.     In contrast, artificial flavor refers to "any substance, the function of which is to impart flavor" from synthetic or chemical sources. 21 C.F.R § 101.22(a)(1).

## III.   FLAVOR OF BLUEBERRIES

20.     Taste is a combination of sensations arising from specialized receptor cells in the mouth.[6]

21.     Taste is complex, because, for instance, the taste of sour includes the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

22.     Each of those acids is responsible for unique sensory characteristics of sourness.

23.     Fruit flavors, including the flavor of blueberries, are the sum of the interaction between their nonvolatile compounds, such as sugars and organic acids, and volatile compounds, including aromatic hydrocarbons, aldehydes, ketones and esters.

24.     The prototypical sweet, tart, sour and fruity taste of blueberries is based on the interaction of their free sugars, glucose and fructose, with its main organic acids of malic acid and secondary predominant organic acids of citric acid and quinic acid.[7]

_____

Academic Press, 2013.
[6] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).
[7] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Malic Acid | Citric Acid |
| Blueberry (Highbush, Jersey) | Malic Acid | Citric Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Chili Pepper (habanero) | Citric Acid | Malic Acid, Succinic Acid |
| Coconut | Malic Acid | Citric Acid |
| Cranberries (American varietals) | Malic Acid (64%) | Citric Acid |
| Dragon fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry (wild pentaploid, Turkish cultivars) | Malic Acid, Tartaric Acid | Citric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

25. L-Malic acid gives blueberries their characteristic tart, sour, sweet and fruity taste valued by consumers.

26. The amount and proportion of malic acid is a critical factor in producing

5

the preferred tart, sweet and sour blueberry taste valued by consumers.

## IV.  DESPITE PROMOTING BLUEBERRIES AND NATURAL FLAVOR, TASTE IS FROM ARTIFICIAL FLAVORING

27.    According to Paul Manning, president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[8]

28.    To capture this trend, The Kroger Co. ("Defendant") sells Blueberry Fruit & Grain Cereal Bars in various shades of blue packaging with pictures of fresh blueberries, bursting from a bar with dark blue filling, described as "Naturally Flavored" and "Made with Real Fruit" under the Kroger brand ("Product").



29.    However, "Naturally Flavored" and "Made with Real Fruit" are false, deceptive, and/or misleading, because the Product uses artificial flavoring ingredients to create, simulate, resemble and reinforce its filling's blueberry taste.

---

[8] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

30.    This is not disclosed on the front label or the fine print on the back or side in the ingredient list.

31.    While the ingredient list in fine print indicates the filling contains blueberries and natural flavor, it also includes the synthetic form of malic acid.



**INGREDIENTS:** BLUEBERRY FLAVORED FILLING (SUGAR, GLYCERIN, CORN SYRUP, WATER, BLUEBERRY PUREE, APPLE PUREE, MALTODEXTRIN, APPLE POWDER, PECTIN, XANTHAN GUM, MALIC ACID, CITRIC ACID, SODIUM ALGINATE, DICALCIUM PHOSPHATE, SODIUM CITRATE, MONO AND DIGLYCERIDES, ASCORBIC ACID – A PRESERVATIVE, POTASSIUM SORBATE – A PRESERVATIVE, NATURAL FLAVOR, COLORS [RED 40, BLUE 1]), WHOLE OAT …

32.    Since the ingredients are listed in order of predominance by weight, listing "Malic Acid" before "Natural Flavor" means the filling contains more artificial fruit flavoring than natural fruit flavor. 21 C.F.R. § 101.4(a)(1).

A.  Two Types of Malic Acid

33.    Malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid. 21 C.F.R. § 184.1069.

34.    These are right and left-hand versions of the same molecular formula.[9]

---

[9] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

L-Malic acid

D-Malic acid

35.　L-Malic Acid occurs naturally in blueberries and is responsible for their characterizing fruity, sour, tart and/or sweet taste.

36.　D-Malic Acid does not occur naturally anywhere.

37.　D-Malic Acid is found as a racemic mixture of the D and L isomers, or DL-Malic Acid.

38.　The production of DL-Malic Acid begins with petroleum.

39.　It involves a catalytic process with numerous chemical reactions, including heating maleic anhydride with water under extreme pressure at 180°C.

40.　This results in an equilibrium mixture of malic and fumaric acids.

41.　The soluble fumaric acid is filtered and recycled, and the synthetic, or DL-, malic acid is concentrated and crystallized.

B.　Distinguishing L- from DL- Malic Acid

42.　Since the two types of malic acid are closely related, companies may replace naturally occurring L-Malic Acid with the lower cost and synthetic DL-Malic Acid.

43.　According to Wilhelmsen, where adulteration involves the direct addition of a foreign substance, well-defined detection limits, sufficiently validated detection methods and knowledge the adulterant and/or its marker are not found in the food product makes detection possible.[10]

[10] Eric C. Wilhelmsen, "Food Adulteration," in Food Science and Technology, Marcel Dekker (2004).

44.     Any detection is indicative of adulteration, without complicated statistical or other analysis.

45.     Since plants do not synthesize D-Malic acid, its presence in certain foods above established thresholds indicates synthetic malic acid has been added.

46.     The most accepted method used to determine if a food contains DL-Malic Acid is based, in part, on a standard adopted by the European Union for the enzymatic determination of the total content of D-malic acid in fruit juices and related products. EN 12138:1997.

47.     This enzymatic approach is based on D-malate dehydrogenase ("D-MDH"), an enzyme that oxidizes D-malic acid ("D-malate") to pyruvate and carbon dioxide in the presence of an appropriate cofactor.

48.     D-malate is oxidized by nicotinamide adenine dinucleotide ("NAD") to oxaloacetate.

$$\text{D-malate} + \text{NAD} \xrightleftharpoons{\text{+ D-MDH}} \text{pyruvate} + CO_2 + \text{NADH} + H^+$$

49.     The oxaloacetate formed by this reaction is split into pyruvate and carbonic acid.

50.     The quantity of NADH formed is proportional to the concentration of D-malic acid and measured at a wavelength of 334, 340 or 365 nm.

51.     Laboratory analysis of the Product's filling was performed based on this enzymatic method in accordance with accepted industry standards and protocols.

52.     Applying D-MDH, D-Malic acid was preferentially oxidized over L-Malic acid.

53.     The result was that the synthetic D-isomer of malic acid was identified, indicating the Product used artificial, DL-Malic Acid and not L-Malic Acid.

54.     This confirmed the Product contains more artificial fruit flavoring than natural fruit flavoring, because malic acid is listed ahead of natural flavor on the

ingredient list.

55.     The combination of DL-Malic Acid with the free sugars from blueberries is not equivalent to the taste of blueberries and natural flavors.

56.     The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the characteristic tart, fruity, sweet and sour taste that blueberries are known for.

57.     DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable, or other natural source, but from petroleum, made through chemical reactions.

58.     DL-Malic Acid is an artificial flavoring ingredient.

59.     DL-Malic Acid does not supplement, enhance, or modify the original taste of blueberries, because it is a core component of its taste. 21 C.F.R. § 170.3(o)(11).

## V.     "NATURALLY FLAVORED" DESCRIPTION IS MISLEADING

60.     The consumer protection statutes of California and Illinois are based on the standards of the Federal Trade Commission ("FTC"), which recognizes the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

61.     California and Illinois apply the FTC standard in considering whether a food's label is misleading.

62.     These laws consider not only representations made or suggested by statements and images, but also the extent to which they fail to prominently and conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning ingredients in the food, which are of material interest to consumers. HSC § 110290; 410 ILCS 620/2.11.

63.     The Product's labeling fails to prominently and conspicuously reveal

facts relative to the proportions or absence of blueberries, natural flavor and artificial flavor.

64.    This is because "Blueberry – Naturally Flavored" tells consumers the filling's taste is from blueberries and natural flavor even though it is provided in part by DL-Malic Acid, an artificial flavoring ingredient.

65.    The replacement of blueberries and natural flavor with DL-Malic Acid, an artificial flavoring ingredient, is of material interest to consumers, because these ingredients cost more than manufactured chemical compounds and because consumers seek to avoid artificial flavors.

66.    The failure to disclose the source of the Product's blueberry taste misleads consumers who expect they are buying a product whose taste comes only from blueberries and natural flavor.

67.    The Product is "misbranded" and misleads consumers because its labeling is false or misleading in any particular. 21 U.S.C. § 343(a)(1); HSC § 110660; 410 ILCS 620/11(a).

68.    The Product is "misbranded" and misleading because even though consumers will expect its taste to be only from the identified ingredients of blueberries and natural flavors, its taste comes in part from the artificial flavoring ingredient of DL-Malic Acid. 21 U.S.C. § 343(a)(1); HSC § 110660; 410 ILCS 620/11(a).

69.    The Product is "misbranded" and misleading because "Made with Real Fruit" is a "half-truth," because even though the filling includes the depicted fruit of blueberries, it includes artificial flavoring in the form of DL-Malic Acid to supply a blueberry taste, present in greater amount than added natural flavors. 21 U.S.C. § 343(a)(1); HSC § 110660; 410 ILCS 620/11(a).

70.    The Product is "misbranded" and misleading because its labeling fails to conspicuously display the required information that its blueberry taste is provided by artificial flavoring. 21 U.S.C. § 343(f). HSC § 110705; 410 ILCS 620/11(f).

71.    The Product is "misbranded" and misleading because it includes the

1   artificial flavoring of DL-Malic Acid but "it [does not] bear[s] labeling stating that
2   fact." 21 U.S.C. § 343(k); HSC § 110740; 410 ILCS 620/11(k).

3         72.   The Product is "misbranded" and misleading because "Naturally
4   Flavored Blueberry Fruit & Grain Cereal Bars" is not a truthful or non-misleading
5   "common or usual name." 21 U.S.C. § 343(i); HSC § 110720; 410 ILCS 620/11(i).

6         73.   "Naturally Flavored Blueberry Fruit & Grain Cereal Bars" does not
7   "accurately identif[y] or describe[s], in as simple and direct terms as possible, the
8   basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. §
9   102.5(a); 21 C.F.R. § 101.3(b)(2).

10        74.   This is because it fails to disclose the source of its blueberry taste, based
11   on the presence of DL-Malic Acid, an artificial flavoring ingredient which imparts the
12   taste of blueberries. 21 C.F.R. § 101.22(i)(2).

13        75.   Federal and state regulations require that because the filling's taste is
14   represented as "Blueberry," yet contains DL-Malic Acid that imparts the flavor of
15   blueberries, "Blueberry" is required to "be accompanied by the word(s) 'artificial' or
16   'artificially flavored,'" such as "Artificial Blueberry Flavored Fruit & Grain Cereal
17   Bars" or "Artificially Flavored Blueberry Fruit & Grain Cereal Bars." 21 C.F.R. §
18   101.22(i)(2).

19        76.   Instead, "Blueberry" is directly above the term, "Naturally Flavored,"
20   when this is false and misleading, based on the use of DL-Malic Acid, an artificial
21   flavoring ingredient, to provide a blueberry taste.

22   **VI.   CONCLUSION**

23        77.   By adding the synthetic ingredient of DL-Malic Acid, purchasers do not
24   receive a product that is "Naturally Flavored" but one that is artificially flavored.

25        78.   The Product could have included more of the highlighted fruit ingredient
26   of blueberries, L-Malic Acid from blueberries or natural flavoring from sources other
27   than blueberries but used artificial DL-Malic Acid because it cost less and/or more

28

12

CLASS ACTION COMPLAINT
*Garland et. al. v. The Kroger Co.*, No.

accurately imparted, provided, simulated, resembled, and reinforced the taste of blueberries.

79.     By adding the synthetic ingredient of DL-Malic Acid, purchasers get a smaller amount of blueberries and natural flavor than what is promised by the front label.

80.     Consumers buying fruit filled cereal bars labeled as naturally flavored without any indication that artificial flavoring supplies the filling's taste are seeking to avoid synthetic ingredients like DL-Malic Acid, created in a laboratory.

81.     As a result of the false and misleading representations and omissions, the Product is sold at a premium price, around $2.99 for eight bars, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## **PARTIES**

82.     Plaintiff Chelsea Garland is a citizen of San Diego County, California.

83.     Plaintiff Leroy Jacobs is a citizen of Cook County, Illinois.

84.     Defendant The Kroger Co. is an Ohio corporation with a principal place of business in Ohio.

85.     While Kroger sells leading national brands of products, it also sells many products under one of its private label brands, Kroger.

86.     Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

87.     Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

88.     Products under the Kroger brand have an industry-wide reputation for quality.

89.     In releasing products under the Kroger brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national

brands.

90.     Kroger gets national brands to produce its private label items due its loyal customer base and tough negotiating.

91.     Private label products under the Kroger brand benefit by their association with consumers' appreciation for the Kroger brand overall.

92.     That Kroger-branded products met this high bar was or would be proven by focus groups, which rated them above their name brand equivalent.

93.     A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands [like Kroger] are good alternatives to national brands, and more than 60 percent consider them to be just as good."

94.     Private label products generate higher profits for retailers like Kroger because national brands spend significantly more on marketing, contributing to their higher prices.

95.     The development of private label items is a growth area for Kroger, as they select only top suppliers to develop and produce Kroger products.

96.     Plaintiffs are like most consumers and prefer foods with natural ingredients and natural flavors.

97.     Plaintiffs are like most consumers and try to avoid foods with artificial flavors, based on the belief they are potentially harmful, not natural and unhealthy.

98.     Plaintiffs are like most consumers and look to the front label of foods to see what they are buying and to learn basic information about it.

99.     Plaintiffs are like most consumers and are accustomed to the front label of packaging telling them if what they are buying gets its taste from artificial flavoring.

100.    Plaintiffs are like most consumers and when they see that a front label does not disclose artificial flavoring, they expect its taste is from the identified ingredients and/or natural flavoring.

101.    Plaintiffs are like most consumers and when they see a label that tells

14

them a food is "Naturally Flavored," they do not expect its taste to be from artificial flavoring and/or that it will contain artificial flavoring ingredients.

102.   Plaintiffs read, saw and relied on the label's statements of Naturally Flavored Blueberry Fruit & Grain Cereal Bars in blue packaging with pictures of blueberries, bursting from a cereal bar with dark blue filling, described as "Made with Real Fruit," and expected its filling's blueberry taste was from blueberries and natural flavors, not artificial flavor.

103.   Plaintiffs relied on the omission of artificial flavoring from the front label as it related to the taste of the Product's filling.

104.   Plaintiffs did not expect that in addition to blueberries and natural flavors, the Product's fruit filling would use artificial flavoring in the form of the synthetic compound of DL-Malic Acid to provide its blueberry taste.

105.   Plaintiffs did not expect that the Product would use DL-Malic Acid in place of adding more blueberries and natural flavors.

106.   Plaintiffs bought the Product with the labeling identified here, including "Naturally Flavored" and "Made With Real Fruit," on blue packaging with pictures of blueberries, at around the above-referenced price.

107.   Plaintiff Garland purchased the Product between January 2020 and January 2024 at Kroger-owned and controlled stores in San Diego County, California and/or other areas.

108.   Plaintiff Jacobs purchased the Product between January 2021 and January 2024 at Kroger-owned and controlled stores in Illinois.

109.   Plaintiffs paid more for the Product than they would have had they known its fruit filling's taste was from artificial flavoring instead of only from blueberries and natural flavor, as they would not have bought it or would have paid less.

110.   The Product was worth less than what Plaintiffs paid, and they would not have paid as much absent Defendant's false and misleading statements and omissions.

111.   Plaintiffs chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

112.   Plaintiff Garland intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its attributes, features, and/or composition.

113.   Plaintiff Garland is unable to rely on the representations not only of this Product, but other similar cereal bars described as being naturally flavored and/or made with real fruit, because she is unsure whether those representations are truthful.

114.   If Defendant's labeling were to be truthful, Plaintiff Garland could rely on the labeling of other such products.

## **JURISDICTION**

115.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

116.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

117.   Plaintiff Garland is a citizen of California.

118.   Defendant is a citizen of Ohio based on its corporate formation and the location of its principal place of business.

119.   The class of persons Plaintiff Garland seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

120.   The members of the proposed class Plaintiff Garland seeks to represent are more than one hundred, because the Product has been sold at grocery stores owned and operated by Kroger under the names including Ralphs in this State and online to citizens of this State.

121.   The Court has jurisdiction over Defendant because it transacts business within California and sells the Product to consumers within California from grocery stores owned and operated by Kroger under the names including Ralphs in this State and online to citizens of this State.

122.   Defendant transacts business in California, through the sale of the Product to citizens of California from grocery stores owned and operated by Kroger under the names including Ralphs in this State and online to citizens of this State.

123.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

124.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

125.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, origin, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## **VENUE**

126.   Venue is in this District is proper because a substantial or the entire part of the events or omissions giving rise to these claims occurred in San Diego County, which is where Plaintiff Garland's causes of action accrued.

127.   Plaintiff Garland purchased, paid money towards or for, used and/or consumed the Product in reliance on the labeling identified here in San Diego County.

128.   Plaintiff Garland became aware the labeling was false and misleading in San Diego County.

129.   Plaintiff Garland resides in San Diego County.

## **CLASS ALLEGATIONS**

130.   This action is brought on behalf of the following classes ("Class"):

17

**California Class:** All persons in California who purchased Kroger Blueberry Fruit & Grain Cereal Bars bearing the labeling identified here in California during the statutes of limitations for each cause of action alleged; and

**Illinois Class:** All persons in Illinois who purchased Kroger Blueberry Fruit & Grain Cereal Bars bearing the labeling identified here in Illinois during the statutes of limitations for each cause of action alleged.

131.   Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

132.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and class members are entitled to damages.

133.   Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

134.   Plaintiffs are adequate representatives because their interests do not conflict with other members.

135.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

136.   The class of persons is sufficiently numerous because the Product has been sold with the representations and omissions identified here for several years throughout the States Plaintiffs are seeking to represent, and it was bought by thousands of consumers.

137.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

18

CLASS ACTION COMPLAINT
*Garland et. al. v. The Kroger Co.*, No.

138.   Plaintiffs' Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

139.   Plaintiff Garland seeks injunctive relief on behalf of the California Class because the practices continue.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**Violation of California's Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, *et seq.***

140.   Plaintiff Garland incorporates the allegations in the paragraphs above as if fully set forth herein.

141.   California's Unfair Competition Law, BPC § 17200, *et seq.* ("UCL"), prohibits any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

142.   Defendant's representations and omissions are "unlawful" because they violate the following provisions of the FFDCA and the Sherman Law including:

a.   21 U.S.C. § 343(a)(1) and HSC § 110660, which deem food misbranded when its label is "false or misleading in any particular";

b.   21 U.S.C. § 343(f) and HSC § 110705, which prohibit labeling that fails to conspicuously display required information;

c.   21 U.S.C. § 343(i) and HSC § 110720, which prohibit labeling that does not contain a truthful and non-misleading "common or usual name"; and

d.   21 U.S.C. § 343(k) and HSC § 110740, which prohibit the use of artificial flavors without disclosing their use.

143.   Defendant's conduct is "unlawful" because it violates California's False Advertising Law, BPC § 17500, *et seq.* ("FAL"), and Consumer Legal Remedies Act,

19

1  Cal. Civ. Code § 1750, *et seq.* ("CLRA").

2      144.   Each of the challenged statements and omissions made and actions taken

3  by Defendant as described violates the FFDCA, Sherman Law and FAL, and therefore

4  violates the "unlawful" prong of the UCL.

5      145.   The purpose of the UCL is to protect consumers against unfair and

6  deceptive practices.

7      146.   Defendant's false and deceptive representations and omissions are

8  material in that they are likely to influence consumer purchasing decisions.

9      147.   The labeling of the Product violated the UCL because the representations

10  and omissions its filling's taste was only from the identified ingredients of blueberries

11  and natural flavor, when it contained added artificial flavoring in the form of DL-

12  Malic Acid, was unfair and deceptive to consumers.

13      148.   Plaintiff Garland believed the Product's filling got its taste only from the

14  identified ingredients of blueberries and natural flavor, even though it contained

15  added artificial flavoring in the form of DL-Malic Acid.

16      149.    Plaintiff Garland paid more for the Product and would not have paid as

17  much if she knew that in addition to blueberries and natural flavor, the filling's taste

18  was from added artificial flavoring in the form of DL-Malic Acid.

19      150.   Plaintiff Garland seeks to recover for economic injury and/or loss she

20  sustained based on the misleading labeling and packaging of the Product, a deceptive

21  practice under the UCL, by paying more for it than she otherwise would have.

22      151.   Plaintiff Garland will produce evidence showing how she and consumers

23  paid more than they otherwise would have paid for the Product, relying on

24  Defendant's representations and omissions, using statistical and economic analyses,

25  hedonic regression, hedonic pricing, conjoint analysis and other advanced

26  methodologies.

27      152.   As a result of Defendant's misrepresentations and omissions, Plaintiff

28  Garland and class members suffered damages in the price premium paid for the

20

1   Product, which is the difference between what they paid for it and how much it would
2   have been sold for without the false and misleading representations and omissions
3   identified here.

4   153.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff Garland
5   seeks an order enjoining Defendant from continuing to conduct business through
6   unlawful, unfair, and/or fraudulent acts and practices and to commence corrective
7   advertising.

### SECOND CLAIM
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

10   154.   Plaintiff Garland incorporates the allegations in the paragraphs above as
11   if fully set forth herein.

12   155.   The FAL prohibits false and/or misleading representations and
13   omissions.

14   156.   Defendant makes "false [and] misleading advertising claim[s]" by
15   deceiving consumers that the Product's filling got its taste only from the identified
16   ingredients of blueberries and natural flavor, even though it contained added artificial
17   flavoring in the form of DL-Malic Acid.

18   157.   In reliance on this false and misleading advertising, Plaintiff Garland
19   purchased and consumed the Product without knowledge it contained added artificial
20   flavoring in the form of DL-Malic Acid.

21   158.   Defendant knew or should have known that its representations and
22   omissions were likely to deceive consumers.

23   159.   Plaintiff Garland seeks injunctive and equitable relief, restitution, and an
24   order for the disgorgement of the funds by which Defendant was unjustly enriched.

25
26
27
28

21

CLASS ACTION COMPLAINT
*Garland et. al. v. The Kroger Co.*, No.

### THIRD CLAIM
#### Violation of California's Consumers Legal Remedies Act,
#### Cal. Civ. Code § 1750, *et seq.*

160.   Plaintiff Garland incorporates the allegations in the paragraphs above as if fully set forth herein.

161.   The CLRA prohibits deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

162.   Defendant's policies, acts, and practices were designed to, and did, result in Plaintiff Garland's purchase, consumption and/or use of the Product primarily for personal, family, or household purposes, and violated and continue to violate sections of the CLRA, including:

    a.   Civil Code § 1770(a)(5), because Defendant represented that the Product had characteristics, attributes, features, capabilities, uses, benefits, and qualities it did not have;

    b.   Civil Code § 1770(a)(9), because Defendant advertised the Product with an intent not to sell it as advertised; and

    c.   Civil Code § 1770(a)(16), because Defendant represented that the Product had been supplied in accordance with its previous representations, when it was not.

163.   Pursuant to Cal. Civ. Code § 1782(a), Plaintiff Garland has or will send a CLRA Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details and includes these violations of the CLRA, demand correction of these violations, and provide the opportunity to correct these business practices.

164.   If Defendant does not correct these business practices, Plaintiff Garland will amend or seek leave to amend the Complaint to add claims for monetary relief, including restitution and actual damages under the CLRA, and injunctive relief to enjoin the unlawful methods, acts and practices alleged, pursuant to Cal. Civ. Code §

22

1780.

<h2 style="text-align:center"><u>FOURTH CLAIM</u></h2>
<h3 style="text-align:center">Illinois Consumer Fraud and Deceptive Business<br>Practices Act ("ICFA"), 815 ILCS 505/1, <em>et seq</em>.</h3>

165.   Plaintiff Jacobs incorporates the allegations in the paragraphs above as if fully set forth herein.

166.   The purpose of the ICFA is to protect consumers against unfair, wrongful and deceptive practices.

167.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

168.   The labeling of the Product violated the ICFA because the representations and omissions its filling's taste was only from the identified ingredients of blueberries and natural flavor, when it contained added artificial flavoring in the form of DL-Malic Acid, was false, and unfair, wrongful, unethical and deceptive to consumers.

169.   Plaintiff Jacobs believed the Product's filling got its taste only from the identified ingredients of blueberries and natural flavor, even though it contained added artificial flavoring in the form of DL-Malic Acid.

170.    Plaintiff Jacobs paid more for the Product and would not have paid as much if he knew that in addition to blueberries and natural flavor, the filling's taste was from added artificial flavoring in the form of DL-Malic Acid.

171.   Plaintiff Jacobs seeks to recover for economic injury and/or loss he sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the ICFA, by paying more for it than he otherwise would have.

172.   Plaintiff Jacobs will produce evidence showing how he and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

173. As a result of Defendant's misrepresentations and omissions, Plaintiff Jacobs and class members suffered damages in the price premium paid for the Product, which is the difference between what they paid for it and how much it would have been sold for without the false and misleading representations and omissions identified here.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Class, pray for judgment and relief as follows:

A.     Certification of the Class, designating Plaintiffs as representatives and Plaintiffs' Counsel as counsel for the Class;

B.     A declaration that Defendant has committed the violations alleged;

C.     For injunctive relief the Court deems appropriate;

D.     For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780, except for monetary damages under the CLRA;

E.     Compensatory damages, the amount to be determined at trial, except for monetary damages under the CLRA;

F.     For attorneys' fees, costs, and interest;

G.     For such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all causes of action so triable.

Dated:   February 5, 2024

Respectfully submitted,

/s/ Manfred P. Muecke

Manfred P. Muecke (SBN 222893)
**Manfred APC**
600 W Broadway Ste 700
San Diego CA 92101

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Tel: (619) 550-4005
Fax: (619) 550-4006
mmuecke@manfredapc.com

*Counsel for Plaintiffs*

CLASS ACTION COMPLAINT
*Garland et. al. v. The Kroger Co.*, No.