UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| CHELSEA GARLAND, individually and on behalf of all others similarly situated; LEROY JACOBS, individually and on behalf of all others similarly situated,, <br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO.,<br><br>Defendant. | Case No.: 24cv240-LL-JLB <br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)** <br><br>[ECF No. 9] |
|---|---|

Before the Court is Defendant The Kroger Co.'s ("Kroger") Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b). ECF No. 9-1 ("Motion" or "Mot."). Plaintiffs Chelsea Garland and Leroy Jacobs filed an Opposition to the Motion [ECF No. 10 ("Opposition" or "Oppo.")] and Kroger filed a Reply [ECF No. 11 ("Reply")].[1] The Court finds this matter suitable for determination on the papers

---

[1] Plaintiffs filed a Notice of Supplemental Authority referencing *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir. 2024), a relevant Ninth Circuit order issued on July 17, 2024, after Plaintiffs had filed their Opposition on June 18, 2024. ECF No. 13. On September 27, 2024, Defendant filed an Ex Parte Application for Leave to File Notice of

1

and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1(d)(1). For the reasons stated below, the Court **GRANTS** the Motion to Dismiss.

I.   BACKGROUND

Plaintiffs initiated this matter by filing their original complaint on February 5, 2024. ECF No. 1. After Defendant filed a Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b) [ECF No. 6], but before the Court ruled on it, Plaintiffs filed a First Amended Complaint on May 13, 2024 [ECF No. 7 ("FAC")]. The following factual allegations are from Plaintiffs' FAC.

In the FAC, Plaintiffs allege four claims in this putative class action: (1) violation of California's Unfair Competition Law ("UCL"), (2) violation of California's False Advertising Law ("FAL"), (3) violation of California's Consumers Legal Remedies Act ("CLRA"), and (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). FAC ¶¶ 140–74.

Plaintiffs seek to represent a California Class of all persons in California who purchased Kroger Blueberry Fruit & Grain Cereal Bars "bearing the labeling identified here in California during the statutes of limitations for each cause of action alleged" and an Illinois Class of all persons in Illinois who purchased Kroger Blueberry Fruit & Grain Cereal Bars "bearing the labeling identified here in Illinois during the statutes of limitations for each cause of action alleged." *Id.* ¶ 130.

---

Supplemental Authority ("Application") referencing *Trammell v. KLN Enterprises, Inc.*, No. 3:23-cv-01884-H-JLB, 2024 WL 4194794 (S.D. Cal. Sept. 12, 2024), a district court ruling issued after the conclusion of briefing for this Motion with legal and factual similarities to the instant action, and which discusses *Whiteside*. ECF No. 14. Counsel for Defendant attests that Plaintiffs' counsel indicated that "Plaintiffs do not intend to oppose Kroger's request to file a notice of supplemental authority." ECF No. 14-1, Declaration of Daniel H. Leigh, ¶ 3. The Court finds good cause to **GRANT** Defendant's Application because Plaintiffs do not oppose, the ruling discusses *Whiteside*, and it is relevant and helpful to the Court's analysis.

Plaintiff Chelsea Garland is a citizen of California and Plaintiff Leroy Jacobs is a citizen of Illinois. *Id.* ¶¶ 82–83. Garland "purchased the Product between January 2020 and January 2024" in San Diego County, California "and/or other areas." *Id.* ¶ 107. Jacobs "purchased the Product between January 2021 and January 2024" in Illinois. *Id.* ¶ 108. Plaintiffs "try to avoid foods with artificial flavors, based on the belief they are potentially harmful, not natural and unhealthy." *Id.* ¶ 97. Plaintiffs allege that they "read, saw and relied" on statements of "naturally flavored" and "made with real fruit" on the front label of Kroger Blueberry Fruit & Grain Cereal Bars ("the Product") that included pictures of blueberries "bursting from a cereal bar with dark blue filling" and "expected its filling's blueberry taste was from blueberries and natural flavors, not artificial flavor." *Id.* ¶ 102; *see also id.* ¶ 28. "Plaintiffs relied on the omission of artificial flavoring from the front label as it related to the taste of the Product's filling." FAC ¶ 103. Plaintiffs did not expect the Product's filling "would use artificial flavoring in the form of the synthetic compound of DL-Malic acid to provide its blueberry taste" in addition to blueberries and natural flavors. *Id.* ¶ 104.



/ / /

/ / /

/ / /



The Product's ingredients list on the back label includes "blueberry puree," "malic acid," and "natural flavor" among many other ingredients. *Id.* ¶ 31. "L-Malic Acid occurs naturally in blueberries and is responsible for their characterizing fruity, sour, tart and/or sweet taste." *Id.* ¶ 35. "[C]ompanies may replace naturally occurring L-Malic Acid with the lower cost and synthetic DL-Malic Acid," which is an artificial flavoring ingredient. *Id.* ¶¶ 42, 58. "Laboratory analysis of the Product's filling was performed" and "the

/ / /

/ / /

synthetic D-isomer of malic acid was identified, indicating the Product used artificial, DL-Malic Acid and not L-Malic Acid." *Id.* ¶¶ 51, 53. The Product sells for about $2.99 for eight bars. *Id.* ¶ 81.

Plaintiffs would not have bought the Product or they would have paid less for it "had they known its fruit filling's taste was from artificial flavoring instead of only from blueberries and natural flavor." *Id.* ¶ 109. Plaintiffs seek injunctive relief, restitution, disgorgement, and compensatory damages. *Id.* at 24.[2]

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6)[3]

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

---

[2] Citations to page numbers in docketed materials refer to the CM/ECF page number printed at the top of each page.

[3] The term "rule" refers to the Federal Rules of Civil Procedure, unless otherwise indicated.

Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

When a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). The Court may deny leave to amend where an amendment would be futile. *Desoto*, 957 F.2d at 658 (citation omitted).

**B.     Rule 9(b)**

The Federal Rules of Civil Procedure state that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct

charged,' including what is false or misleading about a statement, and why it is false." *Puri v. Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). "Allegations of fraud based on information and belief may suffice as to matters peculiarly within the opposing party's knowledge, so long as the allegations are accompanied by a statement of the facts upon which the belief is founded." *Puri*, 674 F. App'x at 687; *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citations omitted).

### C. Rule 12(b)(2)

A defendant may move to dismiss a claim under Rule 12(b)(2) for lack of personal jurisdiction. The plaintiff bears the burden for showing that jurisdiction is appropriate. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010) (citation omitted). When a motion to dismiss is based on written materials instead of an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (citation omitted). "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [the plaintiff's] favor." *Id.*

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Individuals are subject to general jurisdiction where they are domiciled, and corporations are subject to general jurisdiction at both their place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted). "Specific jurisdiction exists when a case 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* at 1068 (citation omitted).

The district court applies the law of the state in which the district court sits when there is no applicable federal statute governing personal jurisdiction, as is the case here. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citations omitted). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800–01. "For a court to exercise personal jurisdiction over a

nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted).

## III. DISCUSSION

Defendant moves to dismiss the FAC without leave to amend for exceeding the statutes of limitations, failure to meet the heightened pleading requirements of their fraud-based claims pursuant to Rule 9(b), failure to demonstrate personal jurisdiction over Defendant for the Illinois state law claim, failure to state a claim upon which relief can be granted, and failure to show standing under Article III of the United States Constitution for injunctive relief. ECF No. 9.

As a preliminary matter, the Court finds that all of Plaintiffs' claims are subject to Rule 9(b)'s heightened pleading requirement. At the core of each of Plaintiffs' claims is the allegation that Defendant engaged in a unified course of fraudulent and misleading conduct by including "naturally flavored" and "made with real fruit" on the Product's front label when the Product contains artificial flavoring ingredients. FAC ¶¶ 147, 156, 162, 169. Therefore, each claim is grounded in fraud and the pleading of each "claim as a whole must satisfy the particularity requirements of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (finding that Rule 9(b)'s heightened pleading standard applies to claims for violations of the CLRA and UCL). As stated above, this requires Plaintiffs to "allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement, and why it is false." *Puri*, 674 F. App'x at 687 (9th Cir. 2017) (citation omitted).

/ / /

/ / /

### A. Statute of Limitations

Defendant argues that Plaintiffs do not plead that they purchased the Product within the relevant limitations period because they each allege an unspecified purchase date with no mention of multiple purchases. Mot. at 15. Plaintiffs contend the claims are timely based on "first discovery" and "continuing violation" exceptions. Oppo. at 24–26.

Plaintiff Garland asserts CLRA and FAL claims that are subject to a three-year limitations period and a UCL claim with a four-year limitations period. Cal. Civ. Code § 1783; Cal. Civ. Proc. Code § 338(a), Cal. Bus & Prof. Code § 17208; *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 799 (N.D. Cal. 2022), *aff'd,* No. 22-16415, 2023 WL 8613496 (9th Cir. Dec. 13, 2023). Plaintiff Jacobs asserts a claim under the ICFA, which has a three-year limitations period. 815 Ill. Comp. Stat. 505/10a(e); *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 791 (N.D. Ill. 2016).

The Court finds Plaintiffs do not adequately plead that their claims are within the applicable statute of limitations. Garland "purchased the Product between January 2020 and January 2024 at Kroger-owned and controlled stores in San Diego County, California and/or other areas." FAC ¶ 107. Jacobs "purchased the Product between January 2021 and January 2024 at Kroger-owned and controlled stores in Illinois." *Id.* ¶ 108. There are no allegations that Plaintiffs made multiple purchases. Thus, the plain meaning is that Plaintiffs bought the Product once sometime within the specified time range. Such vague statements with multi-year ranges of time do not adequately convey when Plaintiffs purchased the Product. *See Marshall v. PH Beauty Labs, Inc.*, No. CV 15-02101 DDP, 2015 WL 3407906, at *2 (C.D. Cal. May 27, 2015) (finding first purchase date plus allegations of subsequent purchases "several times thereafter" and use of the product "for a substantial period of time" to be "vague" and "not sufficient to state a plausible claim within the limitations period"). This action was initiated February 5, 2024, so a three-year limitations period began February 5, 2021 and a four-year limitations period began February 5, 2020. If Plaintiffs purchased the product once, it may not be within the limitations period. If Plaintiffs made their "last purchase" in January 2024, as Plaintiffs

argue, this is not clear in the FAC. *See* Oppo at 25. For these same reasons, Plaintiffs' allegations do not adequately plead "when" the misrepresentation occurred pursuant to Rule 9(b).

Plaintiffs do not plead that any tolling of the statute of limitations applies. The "discovery rule" is one exception that "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 634 (2007). "In order to invoke this special defense to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 297, 146 Cal. Rptr. 271, 274 (Ct. App. 1978). However, the FAC contains no allegations of how or when Plaintiffs discovered the alleged fraud, nor the inability to discover the fraud earlier despite reasonable diligence. *See Clark v. Hershey Co.*, No. C 18-06113 WHA, 2019 WL 913603, at *7 (N.D. Cal. Feb. 25, 2019) (finding plaintiffs did not sufficiently plead that the delayed discovery rule applied because there were no allegations about how they discovered the alleged unlawful labeling).

Another exception that is not sufficiently pleaded is the continuing violation doctrine. "Allegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013) (citations omitted). However, nothing in the FAC alleges "particularized purchases of products." *See Clark*, 2019 WL 913603, at *7.

Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss the claims for failure to adequately plead they are within the limitations period.

### B. Rule 12(b)(2) Personal Jurisdiction over Plaintiff Jacobs' Illinois Claim

Defendant argues that this Court lacks personal jurisdiction over Defendant with respect to Plaintiff Jacobs' ICFA claim. Mot. at 17–18. Plaintiffs oppose, arguing that

Defendant has the minimum contacts necessary to be subject to personal jurisdiction and that the Court may assert pendent personal jurisdiction over Defendant. Oppo. at 27.

The Court finds Plaintiffs have not shown that this Court has personal jurisdiction for their ICFA claim. Jacobs, a citizen of Illinois, was allegedly misled and suffered damages when he purchased the Product in Illinois at stores owned and controlled by Defendant. Plaintiffs plead that the Court has jurisdiction over Defendant "because it transacts business within California and sells the Product to consumers within California from grocery stores owned and operated by [Defendant] under the names including Ralphs in this State and online to citizens of this State." FAC ¶ 121. To the extent Defendant has minimum contacts with California, this does not demonstrate specific jurisdiction as to an Illinois state claim arising from a sale of the Product in Illinois to a citizen of Illinois, with harm incurred in Illinois. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (finding specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation" (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919)); *Action Embroidery Corp.*, 368 F.3d at 1180 (citation omitted). In a similar situation, the Supreme Court found personal jurisdiction lacking in a mass tort action in California state court as to nonresidents alleging harm from a drug manufacturer, noting "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017). The Court reasoned that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 265.

Plaintiff argues that *Bristol-Myers* is not controlling here because it did not involve a class action in federal court and expressly left open "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a

federal court." Oppo. at 26 (citing *Bristol-Myers Squibb Co.*, 582 U.S. at 269). The Court, however, agrees with the federal courts who have considered the issue and found that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions pursuant to diversity jurisdiction. *See Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1011–12 (S.D. Cal. 2020) (collecting cases and stating, "No circuit court has confronted this issue but the overwhelming majority of federal courts that have considered it, in this district and across the county, have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions."); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-CV-06391-BLF, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) ("Plaintiffs identify no authority where a court has determined that *Bristol-Myers* does not apply to a named plaintiff seeking to represent a statewide class of non-forum residents proceeding under non-forum law."). The same concern for due process in *Bristol-Myers* for a nonresident defendant facing a non-forum claim by a nonresident in a mass action in state court should apply here in a putative class action before a federal court sitting in diversity with a nonresident asserting a non-forum claim. *See Goldstein*, 445 F. Supp. 3d at 1012–13 (noting that personal jurisdiction concerns the burden placed on the defendant, which "encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in *the claims in question*," and finding that California has little interest in the claims of nonresidents arising out of purchases made outside California by a Delaware company with a principal place of business in Michigan (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 263)).

Plaintiffs also argue that the Court may assert pendent personal jurisdiction over the ICFA claims, but the Court is not persuaded. Oppo. at 27. "[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp.*, 368 F.3d at 1180. "Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal

jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Id.* at 1180–81. The exercise of pendent personal jurisdiction is within the court's discretion. *Id.* at 1181. Because this action is before the Court based on diversity jurisdiction with no federal claim to hook their state law claim onto, the Court declines to exercise pendent personal jurisdiction.[4] *See LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 885 (N.D. Cal. 2023) (declining to exercise pendent personal jurisdiction because most courts conclude that it cannot be exercised by a federal court sitting in diversity); *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1247 (D. Haw. 2019) (declining pendent personal jurisdiction because there is no federal claim); *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019) ("However, nearly every court considering the issue has concluded pendent party jurisdiction cannot be exercised by a federal court sitting in diversity.").

Accordingly, the Court **GRANTS** Defendant's Motion to dismiss the ICFA claim without leave to amend because the allegations of other facts could not cure the jurisdictional deficiency, but without prejudice to filing in an appropriate jurisdiction. *See DeSoto*, 957 F.2d at 658 (citation omitted).

### C. Rule 12(b)(6) Failure to State a Claim

Defendant contends that Plaintiffs' claims must be dismissed because they cannot plausibly plead consumer deception, and they fail to plead reliance and "when" and

---

[4] Plaintiffs bring this claim under the Class Action Fairness Act of 2005 ("CAFA"). FAC ¶ 115. Because CAFA is an expansion of diversity jurisdiction, the jurisdictional basis for this matter is diversity, not federal question. *Sloan v. Gen. Motors LLC*, 438 F. Supp. 3d 1017, 1021 (N.D. Cal. 2020) ("This is consistent with the fact that CAFA constituted an expansion of diversity jurisdiction; it does not, on its own, purport to establish federal question jurisdiction.").

"where" they purchased the Product with specificity. Mot. at 20, 28; Reply at 6, 10. Plaintiffs disagree. Oppo. at 13–21.

### 1. Synthetic Malic Acid Allegations

As an initial matter, Defendant argues that Plaintiffs do not sufficiently plead that the Product contains synthetic malic acid, which is "the *gravamen* of all of their claims." Mot. at 21–22. Plaintiffs disagree. Oppo. at 15–16.

The Court finds Plaintiffs have failed to plead with sufficient particularity that the malic acid used in the Product is artificial. In the FAC, Plaintiffs explain what makes DL-malic acid artificial, describe a method for testing for its presence, and state that "[l]aboratory analysis of the Product's filling was performed based on this enzymatic method in accordance with accepted industry standards and protocols" which identified the "synthetic D-isomer of malic acid . . . indicating the Product used artificial, DL-Malic Acid and not L-Malic Acid." FAC ¶¶ 33–53. However, the Court finds this to be insufficient to meet Rule 9(b)'s heightened pleading standard for determining that the Product contains synthetic malic acid—the "how" of the "who, what, when, where, and how of the misconduct charged"—because it does not include the specific date or place of the testing, and who conducted the testing. *See Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (finding the plaintiff failed to sufficiently allege the product contained synthetic flavoring in part because of the lack of details about the laboratory test such as "the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."); *see also Ebeid ex rel. U.S.*, 616 F.3d at 998 ("Rule 9(b) requires a party to 'state with particularity the circumstances constituting fraud or mistake,' including 'the who, what, when, where, and how of the misconduct charged.'" (citation omitted)); *Trammell v. KLN Enterprises, Inc.*, No. 3:23-CV-01884-H-JLB, 2024 WL 4194794, at *5 (S.D. Cal. Sept. 12, 2024) (finding allegations that a product contained synthetic malic acid insufficient under Rule 9(b) which included the date, place, and company that conducted the testing, but lacked other details). *But see, e.g., Scheibe v. Perfect Keto Grp. LLC*, 700

F. Supp. 3d 928, 935 (S.D. Cal. 2023) (finding allegations regarding laboratory testing sufficiently alleged the presence of synthetic malic acid); *Scheibe v. Lifeaid Beverage LLC*, No. 23-CV-840-MMA-DEB, 2023 WL 6131082, at *4 (S.D. Cal. Sept. 19, 2023) (same).

The Rule 9(b) standard "does not require absolute particularity or a recital of the evidence," and the Court finds in this case that details of the date and place of the testing and who conducted the testing are not so particular as to go against that standard, especially as this is information in Plaintiffs' possession and upon which the entire complaint is built. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citation omitted). *But see Scheibe v. Fit Foods Distribution, Inc.*, No. 23-CV-220 JLS (AHG), 2023 WL 7434964, at *14 & n.9 (S.D. Cal. Nov. 8, 2023) ("For a court to credit his allegation for its truth, it is enough that Plaintiff allege that laboratory testing occurred and describe the results of that testing."). The Court also finds that requiring some factual details as to when and where the testing was conducted and by whom is aligned with one of the principal purposes of Rule 9(b), which is "[b]y requiring some factual basis for the claims, the rule protects against false or unsubstantiated charges. *See United Healthcare Ins. Co.*, 848 F.3d at 1180. This serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001*)* (citation omitted).

Accordingly, the Court **GRANTS** Defendant's Motion to dismiss Plaintiffs' claims for failing to sufficiently plead the malic acid in the Product is artificial pursuant to Rule 9(b)'s heightened pleading standard. Although this finding is enough to dismiss the entire complaint, the Court will proceed to analyze Defendant's argument regarding consumer deception as if the allegations of synthetic malic acid are sufficient.

### 2.     Consumer Deception

Defendant moves to dismiss all claims on the grounds that "naturally flavored" and "made with real fruit" on the Product's label are not deceptive.

The consumer law claims in this case all require Plaintiffs to prove the Product label is likely to deceive reasonable consumers. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL prohibits "untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17500. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in commercial transactions. Cal. Civ. Code § 1770(a). The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices." 815 Ill. Comp. Stat. 505/2. The reasonable consumer test requires more than a mere possibility that the Product's label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965 (citation omitted). "Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotation marks and citation omitted). A reasonable consumer "is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is the ordinary consumer within the target population." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226, 162 Cal. Rptr. 3d 864, 871–72 (2013) (internal quotation marks and citation omitted).

"California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). However, "[d]ismissal is appropriate when 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'" *Id.* (quoting *Williams*, 552 F.3d at 939).

In evaluating a product's packaging for consumer deception claims at the pleadings stage, "[a] court must begin its analysis with the front label, as reasonable consumers are not expected to look beyond unambiguous misleading representations on the front label to

determine the truth from the rest of the packaging, especially the ingredients list." *Garza v. Spectrum Brands Pet LLC*, No. 1:24-CV-00012-JLT-CDB, 2024 WL 5202472, at *3 (E.D. Cal. Dec. 23, 2024) (citing *Whiteside*, 108 F.4th at 778). "[A] front label can be unambiguous for FRCP 12(b)(6) purposes even if it may have two possible meanings, so long as the plaintiff has plausibly alleged that a reasonable consumer would view the label as having one unambiguous (and deceptive) meaning." *Whiteside*, 108 F.4th at 780.

If the front label is ambiguous, the back label may be considered at the pleadings stage. *Id.* at 778 (citing *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023)). "[A] front label is not ambiguous simply because it is susceptible to two possible meanings; a front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." *Id.* at 781; *see also id.* at 780 (quoting *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021)). "In some cases, other contextual factors aside from the back label can defeat claims that a product's label is misleading." *Id.* at 779; *Moore*, 4 F.4th at 882 ("[I]nformation available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging.").

The Court finds Plaintiffs have not plausibly alleged that the front label of the Product is "unambiguously deceptive to an ordinary consumer, such that the consumer would feel no need to look at the back label." *See Whiteside*, 108 F.4th at 780. Plaintiffs contend that the front label—which includes the phrases "naturally flavored" under the word "blueberry," and "made with real fruit" near pictures of blueberries bursting from a cereal bar with dark blue filling—is misleading because they did not expect the Product would use artificial flavoring in addition to blueberries and natural flavors. FAC ¶¶ 28, 29, 104. The Court does not agree. The front label "'does not promise that the product is wholly natural,' as would a label declaring that a product is '100% natural' or 'all natural'" and so is not unambiguously deceptive. *See Bryan v. Del Monte Foods, Inc.*, No. 23-3685, 2024 WL 4866952, at *1 (9th Cir. Nov. 22, 2024) (quoting *McGinity*, 69 F.4th at 1098); / / /

*Trammell v. KLN Enterprises, Inc.*, No. 3:23-CV-01884-H-JLB, 2024 WL 4194794, at *7 & n.2 (S.D. Cal. Sept. 12, 2024).

The terms "naturally flavored" and "made with real fruit" are ambiguous as to whether the Product is flavored only with natural flavors and blueberries, and reasonable consumers would require more information to make that determination. *See Moore*, 4 F.4th at 882 (finding the phrase "100% New Zealand Manuka Honey" ambiguous and that "reasonable consumers would necessarily require more information before they could reasonably conclude Trader Joe's label promised a honey that was 100% derived from a single, floral source"). A look at the Product's ingredients list on the back label confirms that the Product contains natural flavors and blueberry puree as well as many other ingredients both natural and artificial. *See Manchouck v. Mondelez Int'l Inc.*, No. C 13-02148 WHA, 2013 WL 5400285, at *1–3 (N.D. Cal. Sept. 26, 2013), aff'd, 603 F. App'x 632 (9th Cir. 2015) (finding "made with real fruit" is not misleading when product contains fruit puree). A reasonable consumer would see the artificial ingredients on the list and realize that the Product's flavoring is not entirely natural. Although the ingredients list includes "malic acid" as opposed to the specific subtype of malic acid, federal regulations do not require it to do so. *Scheibe v. Fit Foods Distribution, Inc.*, No. 23-CV-220 JLS (AHG), 2023 WL 7434964, at *4–6 (S.D. Cal. Nov. 8, 2023) (agreeing with the majority of courts finding the listing of "malic acid" as opposed to the scientific name of "DL- or L-malic acid" to be sufficient pursuant to federal regulations, and finding claims relying on the premise that the ingredient list required "DL-malic acid" pursuant to state or federal food labeling regulations to be preempted).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Accordingly, the Court **GRANTS** Defendants' Motion to dismiss Plaintiffs' claims for failing to adequately plead that the Product label is likely to deceive reasonable consumers.[5] Because the Court has found the Product label is not deceptive as a matter of law, any additional factual allegations consistent with the FAC will not change this finding, and amendment of the complaint would therefore be futile. *See Desoto*, 957 F.2d at 658 (citation omitted); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015) (denying leave to amend because any amendment would be futile "as this order finds that the labels at issue are not deceptive, and the labels themselves cannot be changed by a new complaint").

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion with prejudice, and without leave to amend. The Clerk of Court shall enter judgment and close this case.

**IT IS SO ORDERED**.

Dated:  February 12, 2025

Honorable Linda Lopez
United States District Judge

---

[5] Because the Court finds Plaintiffs have not adequately alleged consumer deception as a matter of law, the Court need not reach Defendant's arguments regarding actual reliance and equitable claims.